# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Lisa Gonzalez | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

    Robert Conte, AUSA

    John Ellis, AUSA

Attorneys Present for Defendants:

    Ismael Bautista

**Proceedings:** DEFENDANTS MONEY SHINDAY AND NILA SHINDAY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 10, filed October 12, 2018)

## I. INTRODUCTION

On August 10, 2018, plaintiff United States of America filed suit against defendants Money Shinday ("Money") and Nila Shinday ("Nila"), seeking to collect unpaid federal penalty assessments and interest, and to reduce those assessments to judgment. Dkt. 1 ("Compl."). The penalty assessments stem from defendants' failure to file a Report of Foreign Bank and Financial Accounts ("FBAR") with the Internal Revenue Service ("IRS") in the years 2007 through 2011. Id.

On October 12, 2018, defendants filed the instant motion to dismiss the complaint. Dkt. 10 ("Mot."). On November 13, 2018, the government filed its opposition. Dkt. 12 ("Opp'n"). Defendants did not file a reply brief.

The Court held a hearing on December 3, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

## II. BACKGROUND

The government alleges the following in its complaint.

Defendants, who are husband and wife, reside within Santa Barbara County, California. Compl. ¶ 3. They were, and now are, naturalized citizens of the United States at times relevant to the complaint. Id. ¶ 7.

### A. Statutory Framework

Pursuant to 31 U.S.C. § 5314, United States citizens must "report certain transactions and relationships with foreign financial agencies." Id. ¶ 4; 31 U.S.C.A. § 5314 (West) ("[T]he Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency."). Section 5314's implementing regulations, promulgated by the Department of the Treasury, require that "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists . . . ." 31 C.F.R. § 1010.350(a) (West); Compl. ¶ 5 (citing 31 C.F.R. § 1010.350). The regulation further specifies that United States citizens must report to the IRS, no later than June 30 of each calendar year, foreign financial accounts exceeding $10,000 maintained during the previous calendar year. Id. ¶ 6 (citing 31 C.F.R. § 1010.306(c)).

### B. Defendants' Foreign Accounts History

Money opened defendants' account at UBS AG ("UBS"), a bank in Switzerland, in 1998 with an initial deposit of $5,000. Id. ¶ 16. Money then transferred the account to Nila, who granted Money the "power of attorney," providing Money control of the account. Id. ¶ 17. Money arranged transfers into and out of the account, and before 2002, provided instructions to UBS to use defendants' account to purchase and sell securities and currencies. Id. ¶ 19. Additionally, defendants frequently transferred money from their account to their relatives. Id. ¶ 21. The government alleges that in 2002, UBS prepared a memorandum indicating that defendants asked UBS whether Nila's brother could withdraw $50,000 of defendants' funds from UBS's London branch without it being reported. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

In 2002, UBS notified defendants of changes to U.S. tax law that would require UBS to report defendants' securities transactions to U.S. tax authorities or to withhold and pay taxes to the IRS on the transaction proceeds. Id. ¶ 22. UBS and defendants then agreed that UBS would no longer accept defendants' instructions for the purchase and sale of securities. Id. In 2008, UBS again notified defendants of new laws applying to U.S. citizens with foreign bank accounts, and recommended that defendants close their UBS account. Id. ¶ 23. Defendants soon after transferred the funds in their UBS account to their accounts at the State Bank of India ("SBI"), a bank in India, and eventually closed their UBS account. Id.

The government alleges that before defendants closed their UBS account, defendants' UBS account had year-end balances of $350,019 in 2005, $361,819 in 2006, $420,893 in 2007, and $15,003 in 2008. Id. ¶ 9. Defendants also had "as many as twenty-nine and as few as seven fixed deposit accounts at the State Bank of India[,]" from the years 2005 to 2011. Id. ¶ 10. Defendants' SBI accounts had aggregate year-end balances of $444,035 in 2005, $669,729 in 2006, $258,079 in 2007, $306,647 in 2008, $411,502 in 2009, $216,530 in 2010, and $362,506 in 2011. Id. Because these foreign bank accounts had balances greater than $10,000, defendants were required to file FBARs for each of the years 2005 through 2011. Id. ¶¶ 11–12 .

C. **Defendants' Failure to Disclose their UBS and SBI Accounts**

Defendants filed joint federal income tax returns for the 2005 to 2011 tax years, utilizing a certified public accountant to file those returns. Id. ¶ 25. The returns included a Schedule B, Interest and Dividends, which, *inter alia*, requires defendants to (1) report domestic or foreign interest or dividends, and (2) state whether they have a financial account in a foreign country. Id. ¶¶ 26–27. Defendants did not report the interest or dividends associated with their UBS and SBI accounts for 2005 to 2010. Id. ¶ 26. They checked a box on the Schedule B form for their 2005 to 2010 tax returns indicating that they did not have foreign accounts during those years. Id. ¶ 27. Defendants signed those returns, under penalty of perjury. Id.

For defendants' 2011 tax return, defendants disclosed their SBI accounts, but failed to do so in a timely manner. Id. ¶ 29. The IRS then audited defendants' 2005 to 2011 tax returns. During the audit, defendants ultimately disclosed two Canadian investment accounts, as well as the UBS and SBI accounts. Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

### D. IRS Penalty Assessments against Defendants

The government alleges that the IRS thereafter assessed penalties against defendants based on their UBS and SBI accounts. Id. ¶¶ 31–32. The government claims that on or around August 23, 2016, the IRS assessed non-willful FBAR penalties against Nila for the tax years 2007 to 2011. Id. ¶ 31. Each penalty was $10,000, totaling $50,000. Id. The government alleges that on or about August 23, 2016, the IRS also assessed willful FBAR penalties against Money for the tax years 2007 to 2011. Id. ¶ 32. The aggregate amount of the penalty was $257,888, which represents 25% of the combined 2006 year-end balance of defendants' UBS and SBI accounts, equaling $1,031,548. Id. This total was then divided equally, in order to apply penalties equally for each year starting in 2007 and ending in 2011. Id.

The government further alleges that the assessments were timely. Id. ¶ 33. Under 31 U.S.C. § 5321, the IRS must assess FBAR penalties no later than six years after the date of the violation. Id. ¶ 33 (citing 31 U.S.C. § 5321(b)(1)). Therefore, the last day the IRS could have assessed defendants' 2010 and 2011 FBAR penalties was June 30, 2017 and June 30, 2018, respectively. Id. The assessments for the FBAR penalties for the years 2005 to 2009 were also deemed timely, however, because defendants signed agreements extending the date for the IRS to assess their FBAR penalties until June 30, 2017. Id.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Section 5321 vests the Secretary of the Treasury with the discretion to impose a civil money penalty on a person who fails to file an FBAR. 31 U.S.C.A. § 5321 (West) ("The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314."); see U.S. v. Colliot, No. AU-16-CA-01281-SS, 2018 WL 2271381, at *2 (W.D. Tex. May 16, 2018) (noting the discretion vested in the Secretary of the Treasury); Norman v. United States, 138 Fed. Cl. 189, 195 (2018) (same). In 1987, the Department of the Treasury promulgated 31 C.F.R. § 103.57, which provided that the Secretary of Treasury could assess a civil penalty against a person who willfully fails to file an FBAR, but that this penalty could not exceed $100,000. See 31 C.F.R. § 103.57 (West 2011) (reorganized in 2010 as 31 C.F.R. § 1010.820); Amendments to Implementing Regulations Under the Bank Secrecy Act, 52 Fed. Reg. 11436, 11445–46 (1987). However, in 2004, Congress amended Section 5321 to establish that "in the case of any person willfully violating, or willfully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

causing any violation of, any provision of section 5314," which includes the FBAR filing requirement, "the maximum penalty under subparagraph (B)(i) shall be increased to the greater of $100,000, or 50 percent of the amount" of the balance in the account at the time of the violation. 31 U.S.C.A. § 5321(a)(5)(C) (West). This second option could be greater than $100,000. The statute previously provided that the amount of a willful FBAR penalty could not exceed $100,000. 31 U.S.C.A. § 5321(a)(5)(B) (West 2001). The Department of the Treasury has not amended the regulation's $100,000 willful FBAR penalty cap since Congress amended the governing statute. See 31 C.F.R. § 1010.820. There is now disagreement amongst district courts as to whether the 2004 statutory amendment invalidated the $100,000 cap established by 31 C.F.R § 1010.820.

Defendants argue that the government's claim to reduce Money's penalty assessments to judgment must be dismissed because the government has assessed penalties totaling $269,839, which exceeds the $100,000 penalty cap established by 31 C.F.R. §1010.820. Mot. at 2, 5–6. Relying on two out-of-district cases, U.S. v. Colliot, No. AU-16-CA-01281-SS, 2018 WL 2271381 (W.D. Tex. May 16, 2018) and U.S. v. Wahdan, 325 F. Supp. 3d 1136, No. 17-DV-1287-MSK, 2018 WL 3454973 (D. Colo. July 18, 2018), defendants contend that 31 C.F.R. §1010.820's cap controls because it is consistent with 31 U.S.C. § 5321, the statute under which it was issued. Mot. at 5.

Neither case, however, supports defendants' position. In Colliot, the court found that the IRS could not assess FBAR penalties exceeding the $100,000 cap promulgated under 31 C.F.R. § 1010.820, but the Colliot court only considered FBAR penalties that exceeded $100,000 in a given year. 2018 WL 2271381, at *1. For this reason, while the IRS in Colliot had assessed FBAR penalties against the defendant for the years 2007 to 2010, the court only considered and invalidated the penalties from 2007 and 2008, when the penalties of $548,773 and $196,082, respectively, each exceeded $100,000. Id. at *1. The court did not consider the "smaller penalties" from 2009 and 2010, which only amounted to $88,843 and $10,400, respectively. Id.; No. AU-16-CA-01281-SS, dkt. 16 (Colliot compl.) at 10.

Similarly, the court in Wahdan concluded that the IRS "is not empowered to impose *yearly* penalties in excess of $100,000 per account." 325 F. Supp. at 1141 (emphasis added). In Wahdan, the IRS had assessed FBAR penalties against the defendant in the amounts of $1,108,645.41 for the year 2008, $599,234.54 for the year 2009, and $599,234.54 for the year 2010. Id. at 1137.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:18-cv-06891-CAS-Ex | Date | December 3, 2018 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA V. MONEY SHINDAY ET AL. | | |

As the government argues, the facts of Colliot and Wahdan are thus inapposite to this case because the five penalties assessed against Money are individually all less than $100,000. Compl. ¶ 32; Opp'n at 3. Although in the aggregate the penalties against Money total $257,888, the yearly, individual penalties are each approximately $51,578. Id. Each time Money allegedly willfully failed to timely file an FBAR, the IRS assessed a penalty. Compl. ¶ 32. The penalties were imposed for separate, if successive, alleged FBAR violations resulting from defendants' failure to file FBAR reports in 2007, 2008, 2009, 2010, and 2011. Id. This is within the bounds of 31 C.F.R. § 1010.820(g) ("For *any* willful violation committed . . . the Secretary may assess upon any person, a civil penalty . . . not to exceed the greater of the amount (not to exceed $100,000) equal to the balance in the account at the time of the violation, or $25,000.") (emphasis added).[1]

Accordingly, the Court **DENIES** defendants' motion to dismiss.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to dismiss the government's claim.

00:10
CMJ

---

[1] In addition to arguing that its penalties do not violate 31 C.F.R. § 1010.820's $100,000 cap, the government also argues that 31 C.F.R. § 1010.820 was invalidated by the 2004 amendment to Section 5321. Opp'n at 5, 9 (citing Norman, 138 Fed. Cl. at 195 – 96 (finding that the $100,000 penalty cap established by 31 C.F.R. § 1010.820 is invalid because "Congress clearly raised the maximum civil money penalty in § 5321 to the greater of $100,000 or one half of the balance of the account")). In essence, the government argues that even if the $100,000 penalty cap applied in the aggregate, the amendment in Section 5321 would permit the government to apply a penalty in excess of $100,000. The Court need not reach this issue, however. Irrespective of whether Section 5321 invalidates the Department of Treasury's implementing regulations, there was no year in which Money was penalized for more than $100,000.